**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CHAN KWOK SHING, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ICON PLC, STEPHEN CUTLER, and BRENDAN BRENNAN,<br><br>Defendants. | Case No. 2:25-cv-763-JS-ARL<br><br><br><br>CLASS ACTION |
| POLICE AND FIRE RETIREMENT, SYSTEM OF THE CITY OF DETROIT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICON PLC, STEPHEN CUTLER, and BRENDAN BRENNAN,<br><br>Defendants. | Case No. 2:25-cv-1807-HG<br><br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................3

   I.  Description of the Company and the Case...................................................3

  II.  Procedural History ...................................................................................5

ARGUMENT............................................................................................................6

   I.  This Court Should Consolidate the Related Actions .............................................6

  II.  MPERS Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff...7

     A.  MPERS Has Timely Moved for Appointment as Lead Plaintiff ..................................8

     B.  MPERS Believes That It Has the Largest Financial Interest in the Relief
        Sought by the Class.......................................................................................9

     C.  MPERS Satisfies the Requirements of Rule 23 ..............................................9

        1.  MPERS Is Typical ......................................................................................10

        2.  MPERS Will Fairly and Adequately Represent the Interests of the Class ............11

        3.  MPERS Is Not Subject to Unique Defenses ................................................11

  III.  This Court Should Approve MPERS's Choice of Counsel .............................13

CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Banurs v. Li Auto Inc.,*
  2024 WL 5247763 (E.D.N.Y. Dec. 30, 2024) ..............................................................9

*Hiebert v. Virtu Fin., Inc.,*
  2023 WL 8096927 (E.D.N.Y. Nov. 21, 2023) .................................................. *passim*

*In re Adelphia Comm'cns. Corp. Secs. & Deriv. Litig.,*
  2005 U.S. Dist. LEXIS 19052 (S.D.N.Y. Sept. 1, 2005) .............................................2

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ......................................................................................12

*In re Cendant Corp. Sec. Litig.,*
  109 F. Supp. 2d 235 (D.N.J. 2000) ............................................................................13

*In re Fuwei Films Sec. Litig.,*
  247 F.R.D. 432 (S.D.N.Y. 2008) ...............................................................................11

*In re Gentiva Sec. Litig.,*
  281 F.R.D. 108 (E.D.N.Y. 2012) ...........................................................................2, 10

*In re Olsten Corp Sec. Litig.,*
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .............................................................................6

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................2

*In re WorldCom, Inc. Sec. Litig., 02 Civ. 3288*
  (DLC), 2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004) .............................13

*Johnson v. Celotex Corp.,*
  899 F.2d 1281 (2d Cir. 1990) .......................................................................................6

*Lemm v. New York Cmty. Bancorp, Inc.,*
  733 F. Supp. 3d 107 (E.D.N.Y. 2024) .........................................................................3

*Reitan v. China Mobile Games & Ent. Grp., Ltd.,*
  68 F. Supp. 3d 390 (S.D.N.Y. 2014) .............................................................9, 11, 12, 13

*Richman v. Goldman Sachs Group, Inc.,*
  274 F.R.D. 473 (S.D.N.Y. 2011) ..................................................................................3

*Woburn Ret. Sys. v. Salix Pharms., Ltd.,*
  2015 U.S. Dist. LEXIS 36409 (S.D.N.Y. Mar. 23, 2015) ............................................3

**Statutes**

15 U.S.C. § 78j ..........................................................................................................5

15 U.S.C. § 78t ..........................................................................................................5

15 U.S.C. § 78u-4 ............................................................................................ *passim*

Section 21D(a)(3) of the Securities Exchange Act of 1934 ......................................1, 7

Sections 10 and 20(a) of the Exchange Act ..............................................................1, 5

**Other**

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ........................2

S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ........................................2

17 C.F.R. § 240.10b-5 ...............................................................................................1, 5

Rule 42 of the Federal Rules of Civil Procedure ........................................................6

Rule 23 of the Federal Rules of Civil Procedure ................................................ *passim*

The Public Employees' Retirement System of Mississippi ("MPERS") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 42(a) and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order: (1) consolidating the above-captioned cases; (2) appointing it as lead plaintiff on behalf of the class identified below; and (3) approving MPERS's selection of Barrack, Rodos & Bacine ("Barrack, Rodos") as lead counsel for the class in the securities class action litigation against ICON plc ("ICON" or the "Company") and certain other Defendants.

## PRELIMINARY STATEMENT

MPERS seeks to represent in this securities class action all investors that purchased or otherwise acquired ICON ordinary shares between July 27, 2023 and January 13, 2025. The complaints filed assert claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. In addition to ICON, the named Defendants in both complaints are the Company's Chief Executive Officer ("CEO") Stephen Culter ("Cutler") and the Company's former Chief Financial Officer ("CFO") Brendan Brennan ("Brennan").

Pursuant to the PSLRA, this Court must appoint as lead plaintiff for the class the party "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also Hiebert v. Virtu Fin., Inc.*, 2023 WL 8096927, at *4 (E.D.N.Y. Nov. 21, 2023). In that regard, the Court must determine which movant possesses the "largest financial interest" in the relief sought by the class in this litigation and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Hiebert*, 2023 WL 8096927, at *5. MPERS believes that it is the "most adequate plaintiff" as defined by the PSLRA and should

1

be appointed lead plaintiff in this action.  Having sustained total losses of over $1.97 million as a result of Defendants' misconduct, MPERS has a significant financial interest in the relief sought in this action.[1]  Moreover, MPERS satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the class and it will fairly and adequately represent the claims of the class.

By enacting the PSLRA, Congress expressly intended to encourage institutional investors like MPERS to serve as lead plaintiff in securities class actions.   The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  H.R. CONF. REP. NO. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.  Similarly, the Senate Report on the PSLRA states:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts….  "Institutions with large stakes in class actions have much the same interests as the plaintiff class generally."

S. REP. NO. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (citations omitted); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (recognizing that many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (noting the PSLRA encourages institutional investors to take a role in securities class actions); *In re Adelphia Comm'cns. Corp. Secs. & Deriv. Litig.*, 2005 U.S. Dist. LEXIS 19052, *5-6 (S.D.N.Y. Sept. 1, 2005).  In keeping with that Congressional intent, courts within this Circuit consistently appoint

---

[1]  A chart setting forth calculations of the losses incurred by MPERS is provided as Exhibit 2 to the accompanying declaration of Michael A. Toomey, dated April 11, 2025 ("Toomey Decl.").

2

institutional investors like MPERS as lead plaintiff pursuant to the PSLRA. *See*, *e.g.*, *Lemm v. New York Cmty. Bancorp, Inc.*, 733 F. Supp. 3d 107, 118 (E.D.N.Y. 2024); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2015 U.S. Dist. LEXIS 36409, at *10-25 (S.D.N.Y. Mar. 23, 2015); *Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473 (S.D.N.Y. 2011). MPERS provides benefits for individuals working in state government, public schools, universities, community colleges, municipalities, counties, the Legislature, highway patrol, and other such public entities.

Further reinforcing MPERS's adequacy is the fact that it has chosen Barrack, Rodos, a law firm with significant experience in successfully prosecuting securities class actions, to serve as lead counsel for the class. Therefore, MPERS respectfully submits that it should be appointed lead plaintiff and that the Court should approve its selection of lead counsel. MPERS also moves for consolidation of the two actions that have been filed asserting substantially the same securities fraud claims against the Defendants.

## BACKGROUND

### I.    Description of the Company and the Case

ICON, an Ireland corporation based in Dublin, is a clinical research organization that provides outsourced development and commercialization services to support various stages of the scientific clinical trial process from compound selection to Phase I-IV clinical studies around the world. Unlike many other foreign companies, ICON trades its common shares on NASDAQ.

According to the complaints, as a provider of outsourced services, the Company's revenues are dependent on a steady inflow of new business from both new and existing clients for services. In the period leading up to, and during, the class period, there was a trend in the pharmaceutical development market towards a reduction in research and development expenses, due, at least in part, to tightening access to capital and high interest rates. Nevertheless, the Company assured investors that despite these trends, the Company would benefit from such cost cutting measures at

3

major customers, predicting that macroeconomic pressures would cause customers to consolidate their contracts for outsourced service providers, and the Company's diverse array of services would make it the right solution for many customers. The complaints allege that, in reality, customers did not drive business towards the Company, but rather, cost cutting measures required customers to cancel, limit, reduce, or fail to renew a number of contracts with ICON. In short, during the class period, the Company failed to disclose or significantly understated the impact that macroeconomic pressures on its customers would have on the Company's profitability.

On October 23, 2024, the Company reported a revenue shortfall in Q3 2024 that grossly missed its consensus guidance and announced that this revenue downturn was expected to continue into the next fiscal quarter. On its earnings call, held the next day before market hours, the Company revealed, among other things, that budgetary constraints at two of ICON's largest customers had significantly curtailed upcoming contracts, which had a negative impact on revenue in the quarter and would have ongoing negative impact.

On October 25, 2024, Truist Securities published a report of its follow-up discussions with Company management related to ICON's Q3 2024 financial results announcement that included disclosures that (i) ICON knew for some time that its two largest customers were moving service contracts away from ICON to other providers; and (ii) that Company management was not surprised by the recent influx in competition for contracts. On this news, ICON's share price fell over 20% across two trading days from $280.76 per share on October 23, 2024 to $220.47 per share on October 25, 2024.

Next, on November 21, 2024, during an investor conference call, Defendant Cutler admitted that ICON knew that "20% to 30%" of the RFPs ICON responded to only sought to gauge

4

prevailing industry prices for clinical trial services and were never intended to lead to actual clinical trial work.

Finally, on January 14, 2025, ICON issued financial guidance for 2025 well below analysts' expectations due to "trial activity [that] has been impacted by cautious spending from biopharma customers" and "a headwind from our top two customers." Defendants also revealed that 2025 will be a "transition period" for ICON, indicating that the Company would not return to normal growth for some time.

The news of the disappointing guidance and expected "transition period" due to industry headwinds caused the price of ICON ordinary shares to decline $17.75 per share, or 8.1%, from $217.99 per share on January 13, 2025, to $200.24 per share on January 14, 2025.

The Complaints allege that Defendants, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 15 U.S.C. § 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, disseminated false and misleading material information to the investing public concerning ICON's business operations and prospects, thereby artificially inflated the price of the Company's securities.  As a result of Defendants' alleged wrongful acts and omissions, and the decline in the market value of ICON securities upon revelation of the true state of Company's business and operations, MPERS and the members of the class have suffered significant losses and damages.

## II.    Procedural History

Pending in this District are two related securities class action lawsuits:

| CASE NUMBER | ABBREVIATED CAPTION | FILING DATE |
|---|---|---|
| 2:25-cv-763-JS-ARL | *Shing v. ICON plc, et al.* | February 10, 2025 |
| 2:25-cv-01807-HG | *Police and Fire Retirement System of the City of Detroit v. ICON plc, et al.* | April 2, 2025 |

5

Plaintiffs in these actions allege that Defendants violated the federal securities laws by disseminating false and misleading material information to investors concerning ICON, thereby artificially inflating the price of the Company's securities and causing the members of the class to suffer damages.

## ARGUMENT

### I.      This Court Should Consolidate the Related Actions

Pursuant to the PSLRA, a court "must decide any motion to consolidate prior to deciding a motion for appointment of lead plaintiff in a proposed securities class action." *Hiebert*, 2023 WL 8096927, at *3; *see* 15 U.S.C. § 78u-4(a)(3)(B).  Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of actions that pose common questions of law or fact.  *See* FED. R. CIV. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Hiebert*, 2023 WL 8096927, at *3.  Judicial economy generally favors consolidation and requires the court to conduct a careful inquiry that balances the prejudice and possible confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings would engender.  *See Celotex*, 899 F.2d at 1285.  Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district.  *See Celotex*, 899 F.2d at 1284-85.  Consolidation is generally ordered so long as any confusion or prejudice does not outweigh efficiency concerns.  *Id.*

It is also well recognized that consolidating shareholder class action suits often benefits *both* the court and the parties by expediting pretrial proceedings, reducing case duplication and minimizing the expenditure of time and money by all persons concerned.  *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998).

6

Consolidation is appropriate here. Plaintiffs in the related actions have alleged that Defendants failed to disclose and misrepresented material facts. In each of the complaints, Plaintiffs seek to hold the same Defendants responsible for the consequences of their course of conduct and seek relief under claims arising under the federal securities laws. Plaintiffs in each of the cases share a mutual interest in having this Court resolve questions concerning whether Defendants made material misstatements and/or omitted material facts, and whether the price of ICON stock became artificially inflated as a result. Because the actions pending before this Court present related factual and legal issues, consolidation is appropriate. Moreover, "[a]lthough the actions have 'alleged slightly different class periods,' … this is not a compelling reason against consolidation…. *Hiebert*, 2023 WL 8096927, at *3.

**II.    MPERS Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs the court to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I-II), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice …;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, MPERS satisfies all three of these criteria and is therefore entitled to the presumption that it is the most adequate plaintiff and should be appointed lead plaintiff.

### A.    MPERS Has Timely Moved for Appointment as Lead Plaintiff

Under the PSLRA, any class member may move for appointment as lead plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A).  On February 10, 2025, counsel in the first-filed action caused a notice to be published over *Globe Newswire* pursuant to the PSLRA, which announced that a securities class action had been filed against the Defendants herein, and advised ICON investors of the April 11, 2025 deadline to file a motion to be appointed as lead plaintiff.  *See* Toomey Decl., Exhibit 3.

MPERS satisfies the PSLRA's deadline by filing this motion on April 11, 2025, which is 60 days after the notice of pendency of the above-captioned action.  In addition, MPERS has attached a certification attesting to its willingness to serve as class representative for the class and provide testimony at deposition and trial, if necessary.  *See* Toomey Decl., Exhibit 1.

**B.      MPERS Believes That It Has the Largest Financial Interest in the Relief Sought by the Class**

MPERS respectfully submits that it should be appointed lead plaintiff because it is the movant that is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). When selecting a lead plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23…." *Id.*

MPERS should be appointed lead plaintiff because, as of the time of the filing of this motion, it believes that it has the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, MPERS sustained losses of over $1.97 million from Class Period transactions in ICON stock calculated under either a first-in, first-out ("FIFO") basis or a last-in, first-out ("LIFO") basis. *See* Toomey Decl., Exhibit 2; *see also Reitan v. China Mobile Games & Ent. Grp., Ltd.,* 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014) ("The most important factor is financial loss").[2] To the best of its knowledge, there are no other applicants seeking lead plaintiff appointment that have a larger financial interest in the litigation. Accordingly, MPERS has the largest financial interest of any qualified movant seeking lead plaintiff status, and is the presumptive "most adequate plaintiff…." *Id.*

**C.      MPERS Satisfies the Requirements of Rule 23**

The PSLRA provides that, in addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

---

[2] This calculation is based on the longer class period asserted in the *Police and Fire Retirement System of the City of Detroit* action. *See Banurs v. Li Auto Inc.*, 2024 WL 5247763, at *6 (E.D.N.Y. Dec. 30, 2024) ("[U]se of the more inclusive class period alleged in the [second-filed] Action … is appropriate at this juncture … as the longer class period leaves open for substantive adjudication [all of] the claims….").

9

Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. At the lead plaintiff selection stage of the litigation, "the moving party 'need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *Gentiva*, 281 F.R.D. at 112 (citation omitted).  As detailed below, MPERS satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff.

### 1.   MPERS Is Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  Typicality is met where "where the claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Gentiva*, 281 F.R.D. at 112 (citation omitted).  In other words, typicality is met when the movant makes the same claim as the class claim asserted in the complaint.  Here, MPERS's claims are typical of the claims of the members of the proposed class because, just like all other class members, it: (1) purchased or otherwise acquired ICON ordinary shares during the applicable period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby.  Thus, these claims of MPERS, which are based on the same legal theory and arise from the same events and course of conduct as the class's claims, satisfy the typicality requirement of Rule 23(a)(3).

10

### 2. MPERS Will Fairly and Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Thus, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *In re Fuwei Films Sec. Litig.,* 247 F.R.D. 432, 436 (S.D.N.Y. 2008). MPERS satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the class's claims. Further, there is no evidence of any antagonism between MPERS and the class. MPERS shares numerous common questions of law and fact with the members of the class in establishing Defendants' liability and damages, and its claims are typical of the class. Additionally, as discussed in detail below, MPERS has retained competent and experienced counsel who are able to conduct this complex litigation in a professional manner. *China Mobile,* 68 F. Supp. 3d at 401 (the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention") (citation omitted). Thus, the close alignment of interests between MPERS and the class, combined with its strong desire to prosecute the action on behalf of the class, also militates in favor of granting the instant motion.

### 3. MPERS Is Not Subject to Unique Defenses

The presumption in favor of appointing MPERS as lead plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

11

      (aa)     will not fairly and adequately protect the interest of the class; or

      (bb)     is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

MPERS's ability and desire to fairly and adequately represent the class has been discussed above.  MPERS is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the class.

Further, as noted above, MPERS's appointment as lead plaintiff would also satisfy a critical legislative goal behind enacting the PSLRA – to encourage sophisticated institutions with large financial interests to serve as lead plaintiffs in securities class actions.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff); *see also China Mobile*, 68 F. Supp. 3d at 396 (collecting cases).

MPERS is a sophisticated institutional investor with experience serving as a lead plaintiff, is aware of the requirements and responsibilities of being a lead plaintiff in a securities class action and is willing to undertake these responsibilities on behalf of the class.  It is committed to working with lead counsel to obtain the best possible recovery for the class.  MPERS will continue to remain informed at all times of the status and progress of this action and has directed counsel to provide regular reports about its status and progress.  As an institutional investor, MPERS is committed to zealously litigating this action and actively supervising lead counsel.  As such, MPERS is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA.  Accordingly, MPERS should be appointed lead plaintiff for the class.

### III.    This Court Should Approve MPERS's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *China Mobile*, 68 F. Supp. 3d at 401. MPERS has selected and retained Barrack, Rodos to serve as lead counsel for the class in the action on behalf of ICON investors.

Barrack, Rodos has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Toomey Decl., Exhibit 4. Specifically, Barrack, Rodos has been appointed as lead counsel in dozens of securities class actions, including more than 50 filed since passage of the PSLRA. *Id.* at 16. Barrack, Rodos served as co-lead counsel in *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), where it obtained settlements totaling more than $3.3 billion. Barrack, Rodos also served as co-lead counsel in the *In re WorldCom, Inc. Securities Litigation*, in which settlements totaling over $6 billion were approved by the Honorable Denise Cote. Judge Cote described the services provided by Barrack, Rodos as one of the lead counsel as follows:

> The quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative. Its skill has matched that of able and well-funded defense counsel. It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions. It has cooperated with other counsel in ways that redound to the benefit of the class and those investors who have opted out of the class. The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance.
>
> In sum, the quality of the representation that Lead Counsel has provided to the class has been superb…. Lead Counsel has performed a valuable public service in prosecuting this action with vigor and skill.

*In re WorldCom, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 22992, *67-*68, *72, *73 (S.D.N.Y. Nov. 12, 2004).

In addition, in *In re Apollo Group Inc. Securities Litigation*, Master File No. CV-04-2147 PHX-JAT (D. Az.), Barrack, Rodos was lead counsel for the class in one of the few securities class actions that: (a) was tried to a jury verdict, (b) resulted in a jury verdict in favor of the class, and (c) was upheld in all respects on appeal. In August 2011, the lead plaintiff entered into an agreement with the defendants to resolve a dispute over claims procedures in exchange for the payment of $145 million for the benefit of the class. The *Apollo* court approved the resolution in 2012, noting that BR&B had obtained "an exceptional result for the class." The court also commented that the Firm "demonstrated a high degree of competence in the eight years of litigation of this case," and observed that the result achieved for the class:

> is unique in such securities cases and could not have been achieved without Class Counsel's willingness to pursue this risky case throughout trial and beyond. … [A]s discussed above, ***Plaintiffs' Lead Counsel achieved exceptional results for the Class and pursued the litigation despite great risk***.

More recently, among many other notable cases with recoveries in the hundreds of millions of dollars, Barrack, Rodos was successful in achieving a $970.5 million recovery in *In re American International Group, Inc. 2008 Securities Litigation*, No. 08-CV-4772-LTS-DCF (S.D.N.Y**.)**, and a $335 million recovery in *Pennsylvania Public Schools Employees' Retirement System v. Bank of America Corp.*, *et al.*, Case No. 11-cv-00733-WHP (S.D.N.Y), on behalf of state pension funds serving as lead plaintiffs.

## CONCLUSION

For the above reasons, MPERS respectfully requests that the Court issue an order: (1) consolidating the above-captioned cases; (2) appointing it as the lead plaintiff; (3) approving its choice of Barrack, Rodos & Bacine as class counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: New York, New York
       April 11, 2024

Respectfully submitted,

**BARRACK, RODOS & BACINE**

BY:  /s/ *Michael Toomey*
     Michael A. Toomey
     11 Times Square
     640 Eighth Avenue, 10th Floor
     New York, NY 10036
     Telephone:  (212) 688-0782
     Facsimile:  (212) 688-0783

          and

**BARRACK, RODOS & BACINE**
Jeffrey A. Barrack
Danielle M. Weiss
Andrew J. Heo
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838

*Attorneys for Public Employees'*
*Retirement System of Mississippi and*
*Proposed Lead Counsel for the Class*

15