UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

CHAN KWOK SHING, Individually and on     :   Civil Action No. 2:25-cv-00763-JS-ARL
Behalf of All Others Similarly Situated,         :
                                                 :   CLASS ACTION
                        Plaintiff,               :
                                                 :
                                                 :   MEMORANDUM OF LAW IN SUPPORT
        vs.                                      :   OF MOTION FOR APPOINTMENT AS
                                                 :   LEAD PLAINTIFF AND APPROVAL OF
ICON PLC, STEPHEN CUTLER, and                    :   LEAD PLAINTIFF'S SELECTION OF
BRENDAN BRENNAN,                                 :   LEAD COUNSEL
                                                 :
                        Defendants.              :
                                                 :
———————————————————— x

4910-4326-4053.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................1

III.   ARGUMENT ......................................................................................................5

      A.     The Pension Fund Is the "Most Adequate Plaintiff" and Should Be
           Appointed Lead Plaintiff ...........................................................................5

           1.     The Pension Fund's Motion Is Timely .........................................6

           2.     The Pension Fund Has a Substantial Interest in the Relief Sought
              by the Class ....................................................................................6

           3.     The Pension Fund Is Typical and Adequate of the Putative Class .............7

      B.     The Court Should Approve the Pension Fund's Selection of Counsel ....................8

IV.    CONCLUSION ..................................................................................................10

4910-4326-4053.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
  No. 8:15-cv-00865-AG (C.D. Cal.).............................................................................9

*In re Am. Realty Capital Props., Inc. Litig.*,
  No. 1:15-mc-00040-AKH (S.D.N.Y. Jan. 21, 2020) ................................................8

*In re Cardinal Health, Inc. Sec. Litig.*,
  No. 2:04-cv-00575-ALM (S.D. Ohio).........................................................................9

*In re DHB Indus., Inc. Class Action Litig.*,
  No. 2:05-cv-04296-JS (E.D.N.Y.) ..............................................................................8

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006).........................................................................6

*In re Enron Corp. Sec. Litig.*,
  No. 4:01-cv-03624 (S.D. Tex.) ....................................................................................9

*In re HealthSouth Corp. Sec. Litig.*,
  No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ...............................................................9

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  No. 1:01-cv-01451-REB-KLM (D. Colo.) ..................................................................9

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
  No. 0:06-cv-01691-JMR-FLN (D. Minn.)...................................................................9

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................7

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
  No. 1:02-cv-05893 (N.D. Ill.) .....................................................................................9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  No. 1:08-cv-10783 (S.D.N.Y. May 2, 2016) ..............................................................9

*Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009)................................................................................6

*Teamsters Loc. Union No. 727 Pension Fund v. Vanda Pharms. Inc.*,
  2019 WL 7287202 (E.D.N.Y. May 24, 2019) .........................................................7, 8

4910-4326-4053.v1

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b) ................................................................................................................... 1
  §78t(a) ................................................................................................................... 1
  §78u-4(a)(1) .......................................................................................................... 5
  §78u-4(a)(3)(A) ..................................................................................................... 6
  §78u-4(a)(3)(A)(i) ................................................................................................ 5
  §78u-4(a)(3)(B)(i) ............................................................................................. 1, 5
  §78u-4(a)(3)(B)(ii) ............................................................................................... 1
  §78u-4(a)(3)(B)(iii) .............................................................................................. 1
  §78u-4(a)(3)(B)(iii)(I) .......................................................................................... 6
  §78u-4(a)(3)(B)(iii)(I)(cc) .................................................................................... 7
  §78u-4(a)(3)(B)(v) ........................................................................................... 1, 8

Federal Rules of Civil Procedure
  Rule 23 .............................................................................................................. 6, 7

17 C.F.R.
  §240.10b-5 ............................................................................................................ 1

4910-4326-4053.v1

## I.      INTRODUCTION

Robbins Geller Rudman & Dowd LLP investigated and filed the above-captioned securities class action complaint on behalf of Chan Kwok Shing on February 10, 2025.  The action is brought on behalf of all persons and entities that purchased or otherwise acquired ICON plc ("ICON" or the "Company") common stock between July 27, 2023 and October 23, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

In securities class actions, the Private Securities Litigation Reform Act of 1995 ("PSLRA") states that the Court "shall appoint the most adequate plaintiff as lead plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Roofers Local No. 149 Pension Fund (the "Pension Fund") should be appointed lead plaintiff because it filed a timely motion, has a substantial financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins Geller as lead counsel for the putative class should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     STATEMENT OF FACTS

ICON is a clinical research organization ("CRO").  As a CRO, ICON provides a range of services that help pharmaceutical companies bring new drugs and medical devices to market. These services principally include conducting all aspects of phase I to phase IV clinical trials.

4910-4326-4053.v1

ICON generally offers its clinical trial services through two distinct operating models: (i) Full-Service Outsourcing ("FSO"); and (ii) Functional Service Provision ("FSP"). ECF 1 at ¶14. In FSO arrangements, ICON is responsible for conducting all aspects of a clinical trial, from initial site selection through post-approval monitoring. *Id*. In FSP arrangements, customers choose to outsource certain discrete functions of a clinical trial to ICON while electing to perform certain other functions internally, which allows customers to retain a greater level of control over their research and development ("R&D") costs. *Id*.

ICON organizes its operations around two customer segments:(i) large pharmaceutical; and (ii) biotechnology companies. ECF 1 at ¶15. ICON defines its large pharmaceutical segment as customers within the top 60 in terms of largest annual R&D expenditures. *Id*. ICON's biotechnology customers consist of emerging to small and midsized companies that annually expend less on R&D than the top 60 companies. *Id*. Historically, ICON's large pharmaceutical customers have generally entered into FSO arrangements with the Company. *Id*.

ICON earns a majority of its revenues from its largest pharmaceutical customers. ECF 1 at ¶16. For example, in fiscal year 2023, ICON earned approximately 41% of its revenues from its top 10 customers, while approximately 63% of its revenues were earned from its top 25 customers. *Id*. In that same year, ICON earned nearly 9% of its revenues from its largest customer, Pfizer, Inc. *Id*.

As a CRO, ICON's financial performance and future growth prospects are dependent on a steady inflow of new business. ECF 1 at ¶17. In general, ICON secures new business contracts based upon its responses to requests for proposals ("RFPs") that it receives from existing and prospective clients. ICON's service agreements allow customers to cancel all or part of any services that remain outstanding under the contract. *Id*.

4910-4326-4053.v1

Leading up to and during the Class Period, ICON's customers were seeking to dramatically reduce their R&D expenditures in response to a tightening capital and high interest rate environment. ECF 1 at ¶18. To reduce costs, many of ICON's large pharmaceutical customers implemented drastic cost reduction programs that sought to cut billions of dollars in annual R&D expenditures. *Id*. For example, in the fall of 2023, Pfizer announced it was launching a "cost realignment program" that would cut $4 billion in annual costs by the end of 2024 with 70% of total reductions targeted specifically at R&D costs. *Id*. To further rein in costs, ICON's large pharmaceutical customers also began to increasingly move away from costlier FSO arrangements in favor of "hybrid" models that utilized FSP offerings to conduct broader portions of their clinical trial work. *Id*. The shift allowed customers to reduce fees paid to CROs by performing a greater portion of their clinical studies in-house. *Id*. ICON's smaller biotechnology customers, who are largely dependent on funding from outside investors, were also in the midst of an unfavorable funding environment, which limited their ability to engage CROs for clinical trial work. ECF 1 at ¶19.

During the Class Period, investors did not know how these market dynamics were specifically impacting ICON's business and prospects. ECF 1 at ¶20. ICON and its executives claimed that, notwithstanding wider industry trends, the Company was enjoying robust client demand and in fact ***benefitting*** from market shifts as it meant that ICON's clients were consolidating their CRO providers, with a bigger market share going to ICON. *Id*. For example, during an October 2023 conference call, ICON's CEO, defendant Stephen Cutler, highlighted the "scale" and "breadth" of ICON's service offerings and represented that, due to increasing demand for "blended" solutions, the Company's competitive position within the industry had "never been better." *Id*. Based upon these purported advantages, defendant Cutler represented to investors

- 3 -

that ICON was "well placed to benefit" from the prevailing market challenges, as customers "were happy" to consolidate their overall R&D spend with the Company. *Id*.

Unbeknownst to investors, however, ICON's business, operations, and prospects had significantly deteriorated during the Class Period due to customer cost reduction measures and other industry funding limitations. ECF 1 at ¶21. Contrary to defendants' representations, ICON's purported FSP and hybrid model offerings could not shield the Company from the adverse effects of an industry-wide slowdown. *Id*. ICON's customers had canceled contracts, limited or reduced engagements, delayed clinical trial work, and/or failed to enter into new contracts with ICON for additional clinical trial work at historical rates once existing projects ended (or were scheduled to end) in 2024. Rather than consolidate more CRO business to ICON, the Company's two largest customers had actually diversified their CRO providers away from the Company. *Id*. In addition, a material portion of RFPs that ICON had highlighted as indicative of actual client demand during the Class Period were in fact merely sent to the Company to gauge prevailing industry prices. *Id*. As a result, ICON was not benefitting from market dynamics as defendants represented to investors during the Class Period, but rather was experiencing undisclosed adverse impacts as a result of the broader biotechnology funding slowdown. *Id*.

Then, on October 23, 2024, ICON reported financial results for its third fiscal quarter of 2024, disclosing that ICON had generated quarterly revenues of just $2.03 billion, revealing a surprise "revenue shortfall" that significantly missed consensus estimates of $2.13 billion by more than $100 million. ECF 1 at ¶22. ICON further revealed that its quarterly net new business wins had declined sequentially to $2.3 billion during the quarter from $2.6 billion in the prior quarter and that ICON's book-to-bill ratio fell sequentially to 1.15, down from 1.22 in the prior quarter. *Id*. During the corresponding conference call, ICON CEO, defendant Cutler, revealed that two of

- 4 -

4910-4326-4053.v1

ICON's large pharmaceutical customers had materially curtailed upcoming FSP trial work due to ongoing cost containment measures, which he stated would continue to negatively impact ICON's financial performance going forward. *Id.* On this news, the price of ICON ordinary shares fell more than 20% over two trading sessions. *Id.*

As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of ICON's securities, the Pension Fund and class members have suffered significant losses and damages.

## III. ARGUMENT

### A. The Pension Fund Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice was published by Robbins Geller on February 10, 2025. *See* Declaration of Samuel H. Rudman in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Rudman Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

- 5 -

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Pension Fund meets these requirements and should be appointed Lead Plaintiff.

### 1. The Pension Fund's Motion Is Timely

The February 10, 2025 statutory notice advised putative class members of the pendency of the action, the claims asserted, the Class Period, and the right to move the Court for appointment as lead plaintiff by April 11, 2025. *See* Rudman Decl., Ex. A; 15 U.S.C. §78u-4(a)(3)(A). Because this motion is being timely filed by the statutory deadline, the Pension Fund is eligible for appointment as lead plaintiff.

### 2. The Pension Fund Has a Substantial Interest in the Relief Sought by the Class

As evidenced by its Certification and loss chart, the Pension Fund purchased 2,292 shares of ICON ordinary shares and suffered significant losses of over $179,000 as a result of defendants' alleged misconduct. *See* Rudman Decl., Exs. B, C.[1] To the best of its counsel's knowledge, there are no other class members that satisfy the PSLRA's requirements that have filed a lead plaintiff motion claiming a larger financial interest.

---

[1] A subsequently filed complaint captioned *Police and Fire Ret. Sys. of the City of Detroit v. ICON plc*, No. 1:25-cv-01807 (E.D.N.Y.) was filed on April 2, 2025 on behalf of ICON investors between July 27, 2023 and January 13, 2025. *Compare In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) (finding that "the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members") *with Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (recognizing that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination"). For purposes of this motion and a determination of financial interest, the Pension Fund is providing its trading and losses in the longer *Police and Fire* class period.

4910-4326-4053.v1

### 3. The Pension Fund Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Typicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). "The typicality requirement is satisfied 'where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability.'" *Teamsters Loc. Union No. 727 Pension Fund v. Vanda Pharms. Inc.*, 2019 WL 7287202, at *4 (E.D.N.Y. May 24, 2019) (citation omitted). "The adequacy requirement is satisfied where 'class counsel is qualified, experienced, and generally able to conduct the litigation; . . . the proposed lead plaintiff has interests that are not antagonistic to other class members; and . . . the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims.'" *Id.* (citation omitted).

The Pension Fund satisfies the typicality requirement because, just like all other class members, it: (1) purchased ICON ordinary shares during the relevant time period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages thereby. The Pension Fund's substantial losses provides the requisite interest to ensure vigorous advocacy. Moreover, the Pension Fund's interests are aligned with the putative class. The Pension Fund has amply demonstrated its adequacy by signing a sworn Certification stating that it is willing to serve as, and to assume the responsibilities of, class representative. *See* Rudman Decl., Ex. B. Finally, as explained below, the Pension Fund has selected experienced and qualified counsel, further evidencing its ability to fairly and competently represent the interests of the putative class.

- 7 -

4910-4326-4053.v1

Because the Pension Fund filed a timely motion, has a significant financial interest in the relief sought by the class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff."

**B.     The Court Should Approve the Pension Fund's Selection of Counsel**

The PSLRA provides that the most adequate plaintiff "'shall, subject to the approval of the court, select and retain counsel to represent the class.'" *Vanda*, 2019 WL 7287202, at *5 (quoting 15 U.S.C. §78u-4(a)(3)(B)(v)). "'The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" *Id.* (citation omitted). Here, the Pension Fund has selected Robbins Geller to serve as lead counsel for the proposed class.

Robbins Geller, a 200-attorney nationwide law firm with offices in New York, regularly practices complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country, including this Court, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. For example, this Court oversaw Robbins Geller's work in *In re DHB Indus., Inc. Class Action Litig.*, No. 2:05-cv-04296-JS (E.D.N.Y.), where the Firm worked for 11 years ***after*** obtaining a $34.9 million settlement to ensure that class members were protected against unanticipated events and ancillary litigation that threatened the viability of the original settlement, eventually distributing more than $73 million to class members. *See also In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH, ECF No. 1316 at 55 (S.D.N.Y. Jan. 21, 2020) (Concerning Robbins Geller's role as lead counsel in recovering $1.025 billion for the class in a

- 8 -

4910-4326-4053.v1

securities class action, stating "the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783, ECF No. 243 at 10-11 (S.D.N.Y. May 2, 2016) (Concerning Robbins Geller's role as lead counsel in recovering $272 million for the class of MBS purchasers, stating: "Counsel, thank you for your papers. They were, by the way, extraordinary papers in support of the settlement," and acknowledging "plaintiffs' counsel's success in the Second Circuit essentially changing the law. I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute . . . . Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job.").

Robbins Geller attorneys have also obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[2] And, while trials in shareholder class actions are rare, Robbins Geller has tried nine cases, including a February 2019 trial in the Central District of California in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-

---

[2] *See, e.g.*, *In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery ever following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) (represented lead plaintiff CalPERS in obtaining $925 million recovery which is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery for the class is the largest securities recovery in the Tenth Circuit; Robbins Geller attorneys also created a mechanism that allowed class members to share an additional $250 million recovered by the SEC); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.

Thus, the Court can be assured that by approving the Pension Fund's choice of Robbins Geller as lead counsel, the putative class will receive the highest caliber of representation.

## IV.    CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

DATED: April 11, 2025                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD


*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

ASHERKELLY
MICHAEL J. ASHER
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
masher@asherkellylaw.com

Additional Counsel

- 10 -

4910-4326-4053.v1