**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAN KWOK SHING, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>ICON PLC, STEPHEN CUTLER, and BRENDAN BRENNAN,<br><br><br>Defendants. | Case No. 2:25-cv-00763-JS-ARL<br><br>CLASS ACTION |
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>ICON PLC, STEPHEN CUTLER, and BRENDAN BRENNAN,<br><br><br>Defendants. | Case No. 2:25-cv-01807-HG<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
OF THE POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, THE
TRUSTEES OF THE LOCAL 464A UNITED FOOD & COMMERCIAL WORKERS'
UNION WELFARE SERVICE BENEFIT FUND, AND THE TRUSTEES OF THE
WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND FOR
APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF
LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 4

ARGUMENT ............................................................................................................................ 7

    A.     Detroit P&F and Local 464A Are the Most Adequate Plaintiff ...................................... 7

        1.     Detroit P&F and Local 464A's Motion Is Timely ..................................................7

        2.     Detroit P&F and Local 464A Believe They Have the Largest Financial Interest in the Relief Sought by the Class ..................................................................................8

        3.     Detroit P&F and Local 464A Satisfy the Requirements of Rule 23 .......................8

        4.     Detroit P&F and Local 464A Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ...................................................................................11

    B.     Detroit P&F and Local 464A Selected Well-Qualified Lead Counsel .......................... 14

    C.     The Related Actions Should Be Consolidated ................................................................ 16

CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Chilton v. Chiumento Group*,
365 Fed. App'x 298 (2d Cir. 2010) ................................................................... 8

*Glauser v. EVCI Career Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................... 12

*Hom v. Vale, S.A.*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .......................................... 9, 10, 11

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................ 13, 16, 18

*Mustafin v. GreenSky, Inc.*,
2019 WL 1428594, (S.D.N.Y. Mar. 29, 2019) ......................................... 13, 15

*Rauch v Vale S.A.*,
378 F. Supp. 3d 198 (E.D.N.Y. 2019) ............................................................... 2

*Reimer v. Ambac Fin. Grp., Inc.*,
2008 WL 2073931 (S.D.N.Y. May 9, 2008) .................................................... 15

*Teamsters Local Union No. 727 Pension Fund v. Vanda Pharm. Inc.*,
2019 WL 7287202 (E.D.N.Y. May 24, 2019) ............................................. 9, 12

*Villella v. Chem. & Mining Co. of Chile Inc.*,
2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015) .................................................... 2

**Other Authorities**

House Conference Report No. 104-369 (1995) ........................................... 5, 13

Senate Report No. 104-98, at 11 (1995) ........................................................ 13

**Statutes and Regulations**

15 U.S.C. § 78j(b) ............................................................................................ 3

15 U.S.C. § 78t(a) ............................................................................................ 3

15 U.S.C. § 78u-4(a)(3)(A) .............................................................................. 9

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................... passim

17 C.F.R. § 240.10b-5 ...................................................................................... 3

Rule 23 of the Federal Rules of Civil Procedure ................................................................... passim

Rule 42(a) of the Federal Rules of Civil Procedure................................................................ 3, 18

Sections 10(b) and 20(a) of the Exchange Act ........................................................................ 18

The Police & Fire Retirement System of the City of Detroit ("Detroit P&F"), the Trustees of the Local 464A United Food & Commercial Workers' Union Welfare Service Benefit Fund, and the Trustees of the Welfare and Pension Funds of Local 464A – Pension Fund (collectively, "Local 464A") respectfully submit this memorandum of law in support of their motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of their selection of Bleichmar Fonti & Auld LLP ("BFA") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the Class; (3) for consolidation of the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

There are currently two Related Actions pending against ICON plc ("ICON" or the "Company") and certain of its current and former senior officers (collectively, "Defendants"). Detroit P&F filed the second of these actions. The Related Actions allege that Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Specifically, the Related Actions allege that from July 27, 2023, through January 13, 2025 (the "Class Period"), Defendants misrepresented that ICON was benefitting from a significant industry-wide downturn during which the Company's current and prospective customers sought to cut costs.[1]

---

[1] The Related Actions assert different class periods. For purposes of appointing a Lead Plaintiff, the longest alleged class period governs. *See Rauch v Vale S.A.*, 378 F. Supp. 3d 198, 208 n.11

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is to determine which movant or group has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, Detroit P&F and Local 464A are the "most adequate plaintiff" by virtue of, among other things, the roughly $2.3 million in losses they incurred on their investments in ICON ordinary shares during the Class Period.[2] In addition to asserting the largest financial interest, Detroit P&F and Local 464A readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class.

Moreover, as a small and cohesive group of sophisticated institutional investors that collectively manage more than $4.1 billion in total assets on behalf of more than 31,000 participants and beneficiaries, Detroit P&F and Local 464A are the prototypical candidate Congress encouraged to serve as lead plaintiff under the PSLRA, and their appointment would therefore fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of

---

(E.D.N.Y. 2019); *Villella v. Chem. & Mining Co. of Chile Inc.*, 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015).

[2] Detroit P&F and Local 464A's PSLRA-required Certifications are attached as Exhibit A to the Declaration of Javier Bleichmar (the "Bleichmar Decl.") submitted herewith. Detroit P&F initially submitted its PSLRA Certification with the complaint it filed in *Police and Fire Retirement System of the City of Detroit v. ICON plc*, No. 2:25-cv-1807-HG (E.D.N.Y. Apr. 2, 2025) ("*Detroit P&F*") (s*ee Detroit P&F*, ECF No. 1) and resubmits it here for the Court's convenience. In addition, charts providing calculations of Detroit P&F's and Local 464A's financial interests are provided as Exhibit B to the Bleichmar Decl.

representation in securities class actions"). As set forth in the joint declaration of David Cetlinski and Richard Whalen (the "Joint Declaration") submitted herewith, Detroit P&F and Local 464A each have experience litigating other securities and shareholder actions—including with BFA and Kessler Topaz—and Detroit P&F has significant experience leading complex securities class actions in partnership with other institutional investors. *See* Bleichmar Decl., Ex. C ¶¶ 3, 5.

Further, Detroit P&F and Local 464A fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and are willing and able to undertake those responsibilities to ensure the vigorous prosecution of the Related Actions. *See id.* ¶¶ 1, 3, 5-7. The Joint Declaration supports this understanding by evidencing: (1) Detroit P&F and Local 464A's determination that their joint appointment would benefit the Class and their ability to work together as a cohesive group to vigorously and effectively prosecute the litigation against Defendants; (2) the basis for Detroit P&F and Local 464A's selection of BFA and Kessler Topaz as proposed Lead Counsel, including the firms' extensive history of successfully prosecuting securities class actions; and (3) the specific steps Detroit P&F and Local 464A have taken (and will continue to take) to ensure the effective and efficient prosecution of the Related Actions. *See id.* ¶¶ 8-15. Moreover, before seeking appointment as Lead Plaintiff, representatives of Detroit P&F and Local 464A convened a conference call and discussed how they will coordinate their joint prosecution of this litigation, and otherwise ensure the vigorous, cost-effective prosecution of the Related Actions in the best interests of the Class. *See id*. ¶¶ 11-13. Accordingly, Detroit P&F and Local 464A have provided ample evidence of their ability to work together effectively, as well as their commitment and ability to fulfill their obligations to the Class under the PSLRA.

Detroit P&F and Local 464A's adequacy is also demonstrated through their selection of BFA and Kessler Topaz to serve as Lead Counsel for the Class. Both firms are highly experienced

3

in prosecuting claims under the federal securities laws and have achieved historic recoveries in actions subject to the PSLRA. Based on Detroit P&F and Local 464A's significant financial interest in the outcome of this action, and their ability to jointly oversee the prosecution of the litigation in a cohesive manner, Detroit P&F and Local 464A respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## FACTUAL BACKGROUND

ICON is a clinical research organization ("CRO") that provides development and commercialization services, including conducting clinical trials, to companies developing new drugs and medical devices. ¶ 23.[3] In 2021, the Company acquired a rival CRO named PRA Health Sciences, Inc. ("PRA"). ¶ 24. ICON's financial performance and growth prospects depend on a steady flow of new business, which it largely secures based on its responses to requests for proposals ("RFPs") that the Company receives from existing and prospective customers. ¶ 27. Before and during the Class Period, many of ICON's current and prospective customers sought to reduce their R&D spending due to an industry-wide tightening of capital and a higher interest-rate environment. ¶ 28. For instance, ICON's largest customer, Pfizer, announced a "cost realignment program" in 2024 designed to cut $4 billion in annual costs. *Id*.

During the Class Period, Defendants misrepresented that ICON was benefiting from the downturn. ¶ 3. For example, Defendants asserted that the Company was "well positioned" to win business due to the "depth and breadth of our capabilities," that ICON's "competitive position has never been better in being able to address our customer needs," that "we're taking market share" due to "our strong operational delivery," and that they were seeing "healthy" and "strong demand."

---

[3] Citations to ¶ __ refer to the complaint filed in *Detroit P&F*, ECF No. 1, unless otherwise indicated.

4

*Id*. As purported evidence of strong demand, Defendants also repeatedly touted a strong and growing "RFP flow." *See, e.g.,* ¶¶ 33, 37, 40. Further, Defendants specifically assured investors that Pfizer's cost cutting efforts presented an "opportunity" for ICON because Pfizer was "happy to further consolidate their spending" with the Company. ¶ 44.

In truth, rather than benefiting from the industry downturn, ICON experienced a significant decline in demand. ¶ 64. Further, its largest customers, including Pfizer, had warned the Company for years that they intended to diversify business away from ICON. *Id*. Moreover, the "RFP flow" Defendants touted as a sign of strong demand did not indicate anything of the sort. *Id*. Instead, ICON executives knew that a significant portion of RFPs only sought to gauge prevailing industry prices for clinical trial services and were never intended to lead to actual clinical trial work. *Id*.

Investors began to learn the truth on October 23, 2024, when ICON reported 3Q24 financial results that included a surprise "revenue shortfall" of $100 million for 3Q24 and significantly reduced guidance for 2024, which Defendants had reiterated just six weeks earlier. ¶ 6. Defendants blamed the revenue shortfall and reduced guidance on "material headwinds from two large customers undergoing budget cuts and changes in their development model" as well as "ongoing cautiousness from biotech customers resulting in award and study delays," that "we expect . . . to continue into quarter four." *Id*.

The next day, October 24, 2024, Defendants admitted it was "fair to say that one or two [customers] have looked at if PRA and ICON were significant providers in the previous mix and now [that] we've come together" customers have "looked at that" concentration of work and "in one or two cases [they] brought on [a] competitor" to conduct work ICON previously performed. ¶ 71. What's more, Defendants revealed "that's what we expected." *Id*.

5

Then, on October 25, 2024, Truist Securities ("Truist") published a report summarizing a conversation Truist analysts had with Defendants. ¶ 7. According to Truist, Defendants knew ICON's two largest customers intended to diversify business away from ICON and that contracted clinical work from the two customers was scheduled to end in the summer of 2024. ¶¶ 7, 72. ICON management described the situation to Truist as "not a new development," and said it "did not come as a surprise" that the customers moved business to ICON's competitors. *Id.* Truist further revealed that after ICON merged with PRA in 2021, customers that previously had business with both companies were left with an unwanted overconcentration of business with ICON. ¶ 8. According to Truist, the overconcentration "was flagged internally at the pharma customers" at the time of the merger and it was known within ICON that the customers wanted to "balance potential risk in how much work is being sent to one particular provider." *Id*. On these disclosures, the price of ICON ordinary shares declined $60.29 per share, or more than 21%, from $280.76 per share on October 23, 2024, to $220.47 per share on October 25, 2024. ¶ 9.

Next, on November 21, 2024, Defendants admitted that ICON knew that "20% to 30%" of the RFPs the Company responded to only sought to gauge prevailing industry prices for clinical trial services and were never intended to lead to actual clinical trial work. ¶ 10.

Finally, on January 14, 2025, ICON issued financial guidance for 2025 well below analysts' expectations due to "trial activity [that] has been impacted by cautious spending from biopharma customers" and "a headwind from our top two customers." Defendants also revealed 2025 would be a "transition period" for ICON, indicating that the Company would not return to normal growth for some time. ¶ 11. On this news, the price of ICON ordinary shares declined $17.75 per share, or 8.1%, from $217.99 per share on January 13, 2025, to $200.24 per share on January 14, 2025. ¶ 12.

6

**ARGUMENT**

**A.    Detroit P&F and Local 464A Are the Most Adequate Plaintiff**

Detroit P&F and Local 464A respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a lead plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant or group that has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010)  (discussing qualifications for most adequate plaintiff presumption).  As set forth below, Detroit P&F and Local 464A believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**1.    Detroit P&F and Local 464A's Motion Is Timely**

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On February 10, 2025, Plaintiff Chan Kwok Shing filed the first of the Related Actions.  *See Shing*, ECF No. 1.  On the same day, counsel for Shing published a notice on *GlobeNewswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by April 11, 2025.  *See* Bleichmar Decl., Ex. D.

On April 2, 2025, Detroit P&F filed a substantially similar action against Defendants which expanded the end of the Class Period from October 23, 2024, to January 13, 2025.  *See Detroit P&F*, ECF No. 1 ¶ 1.  Also on April 2, 2025, counsel for Detroit P&F, BFA, published a notice on *ACCESS Newswire* alerting investors to the expanded Class Period and reminding investors of the April 11, 2025 deadline to seek Lead Plaintiff status.  *See* Bleichmar Decl., Ex. E.  Accordingly,

7

Detroit P&F and Local 464A satisfy the PSLRA's 60-day requirement through the filing of this motion.

### 2. Detroit P&F and Local 464A Believe They Have the Largest Financial Interest in the Relief Sought by the Class

Detroit P&F and Local 464A believe they have the "largest financial interest in the relief sought by the class" and thus should be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Detroit P&F and Local 464A incurred a loss of approximately $2.3 million on their investments in ICON ordinary shares during the Class Period. *See* Bleichmar Decl., Exs. A-B. To the best of Detroit P&F and Local 464A's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, Detroit P&F and Local 464A believe that they have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. Detroit P&F and Local 464A Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Detroit P&F and Local 464A otherwise satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Hom v. Vale, S.A.*, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) ; *see also Teamsters Local Union No. 727 Pension Fund v. Vanda Pharm. Inc.*, 2019 WL 7287202, at *3 (E.D.N.Y. May 24, 2019) ("In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary, prima facie showing' that the typicality and adequacy requirements of Rule 23 are satisfied"). Here, Detroit P&F and Local 464A unquestionably satisfy both requirements.

8

Detroit P&F and Local 464A's claims are typical of the claims of other purchasers of ICON ordinary shares. Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Vale*, 2016 WL 880201, at *6. Here, Detroit P&F and Local 464A and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, Detroit P&F and Local 464A: (1) purchased ICON ordinary shares during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged as a result. *See id.* (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and w[as] injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws"). As such, Detroit P&F and Local 464A satisfy the typicality requirement of Rule 23.

Detroit P&F and Local 464A likewise satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Vale*, 2016 WL 880201, at *6. Detroit P&F and Local 464A satisfy these elements because their substantial financial stake in the litigation provides them with the ability and incentive to vigorously represent the Class's claims. Detroit P&F and Local 464A's interests are directly aligned with those of the other Class members and are not antagonistic

9

in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Detroit P&F and Local 464A, and other Class members.

Detroit P&F has also demonstrated its adequacy through its willingness to vigorously pursue the claims and the significant steps it has already taken to protect and advance the interests of the Class by filing *Detroit P&F*, which broadened the Class Period to better protect the interests of ICON investors damaged by Defendants' alleged fraud.

To further demonstrate their ability to litigate this case in the best interests of the Class, Detroit P&F and Local 464A submitted the Joint Declaration, which describes how and why they came to work together in this action. *See* Bleichmar Decl., Ex. C ¶¶ 8-12. The Joint Declaration also affirms their understanding of the duties owed to the Class, their shared commitment to recovering losses caused by the alleged violations of the federal securities laws, and discusses Detroit P&F and Local 464A's experience in securities class action litigation. *See id*. ¶¶ 1-7. Through the Joint Declaration and their PSLRA Certifications, Detroit P&F and Local 464A have demonstrated that they understand and accept the fiduciary obligations they will assume if appointed Lead Plaintiff and will zealously represent the interests of all Class members. *See* Bleichmar Decl., Exs. A, C.

Finally, Detroit P&F and Local 464A have demonstrated their adequacy through their selection of BFA and Kessler Topaz as Lead Counsel to represent the Class in this case. As discussed more fully below, BFA and Kessler Topaz are highly qualified and experienced in securities class action litigation and have repeatedly demonstrated an ability to conduct such litigation effectively. Accordingly, Detroit P&F and Local 464A satisfy the typicality and adequacy requirements of Rule 23.

**4.      Detroit P&F and Local 464A Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, as a small cohesive group of sophisticated institutional investors that collectively manage approximately $4.1 billion in assets on behalf of more than 31,000 participants and beneficiaries, with a substantial financial interest in the litigation, Detroit P&F and Local 464A are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs") (citation omitted); *Vanda*, 2019 WL 7287202, at *4 n. 3  ("Congress prefers institutional investors . . . to serve as lead plaintiff in PSLRA cases"); S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The [c]ommittee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

As set forth in the Joint Declaration, Detroit P&F and Local 464A have also demonstrated their commitment and ability to work together cohesively in the prosecution of this action.  *See generally* Bleichmar Decl., Ex. C.  The text of the PSLRA expressly permits the appointment of a group of class members to serve as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *id.* § 78u-4(a)(3)(B)(i).    Accordingly, courts in the Second Circuit and throughout the country have repeatedly recognized the propriety of appointing groups of institutional investors that "are able to 'function cohesively and to effectively manage the litigation apart from their lawyers.'" *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing

11

group of institutional investors) (citation omitted); *see also Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing "coalition of three institutional investors" that "demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives").

The Joint Declaration also sets forth the reasons why and how Detroit P&F and Local 464A decided to collaborate in this litigation and establishes how they intend to oversee counsel and this litigation. *See generally* Bleichmar Decl., Ex. C. As reflected in the Joint Declaration, prior to seeking appointment as Lead Plaintiff, representatives of Detroit P&F and Local 464A consulted with their respective counsel regarding the merits of the claims against Defendants and the potential to seek a leadership role in this matter. *See id.* ¶¶ 8-10. As part of that consultation, Detroit P&F and Local 464A also considered whether there was an opportunity to work with other institutional investors in seeking Lead Plaintiff appointment, and whether doing so would be in each of their respective interests and in the best interests of the Class. *See id.*

After analyzing the merits of the claims against Defendants and their respective losses incurred as a result of Defendants' alleged misconduct, and after consulting with their respective counsel, Detroit P&F and Local 464A each independently determined that serving as Lead Plaintiff together would allow them to maximize the recovery for all class members, and approved the filing of their joint motion. *See id.* ¶ 9. Detroit P&F and Local 464A believe that their partnership will allow them to share experiences, perspectives, and resources when leading this litigation, which will add substantial value to the prosecution of the Related Actions and benefit the Class. *See id.*

Indeed, Detroit P&F has a history of success working as part of lead plaintiff groups to prosecute securities claims. For instance, in *In re Marvell Technology Group, Ltd. Securities Litigation*, No. 06-cv-06286 (N.D. Cal.), Detroit P&F, as a co-lead plaintiff, worked together with

two other institutional investors to recover $72 million for investors. Detroit P&F also served as a co-lead plaintiff alongside two other institutions in *Juenger v. King Pharmaceuticals, Inc.*, No. 03-cv-00077 (E.D. Tenn.) recovering $38.25 million for investors, as well as in *Police and Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, No. 06-cv-05797 (S.D.N.Y.), recovering $25 million for investors. Additionally, Detroit P&F currently serves as a co-lead plaintiff along with four other institutional investors in *In re ASML Holding N.V. Securities Litigation*, No. 24-cv-08664 (S.D.N.Y.), in which Kessler Topaz serves as co-lead counsel. *See id.* ¶ 3.

The Joint Declaration also demonstrates that Detroit P&F and Local 464A have already taken (and will continue to take) measures to ensure the vigorous prosecution of this action and oversee their counsel. Indeed, before seeking appointment as Lead Plaintiff, representatives of Detroit P&F and Local 464A participated in a conference call in which they discussed, among other things: the facts and the merits of the claims against Defendants; the losses arising from Defendants' alleged misconduct; the strategy for the prosecution of this litigation; their shared interest in serving jointly as Lead Plaintiff in this case and their commitment to take an active role in supervising the prosecution of the action; and the benefits that the Class would receive from their joint leadership of the case. *See id.* ¶¶ 11-12. Detroit P&F and Local 464A's representatives also discussed the importance of joint decision-making and maintaining open lines of communication and put in place procedures that will enable each of them to confer, with or without their counsel, to ensure that they are able to make timely decisions. *See id.* ¶ 13. Through these and other measures, Detroit P&F and Local 464A have sought to ensure that the Class will receive the best possible representation.

The evidence submitted by Detroit P&F and Local 464A establishing their commitment to zealously and efficiently represent the interests of the Class is more than sufficient to satisfy the

adequacy and typicality requirements here.  Detroit P&F and Local 464A have demonstrated that they have ample willingness, resources, and experience, and are committed to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. *See, e.g.*, *GreenSky*, 2019 WL 1428594, at *5 (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of three institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers"); *In re Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel").

**B.      Detroit P&F and Local 464A Selected Well-Qualified Lead Counsel**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

BFA is among the foremost securities class action law firms in the country.  BFA's partners have served as lead and co-lead counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades.  *See* Bleichmar Decl., Ex. F (BFA's Firm Résumé).  For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceuticals Industries Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.), as well as a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.).  Previously, BFA secured a $120 million recovery in *Freedman v. Weatherford International Ltd.*, No. 1:12-cv-02121-LAK

14

(S.D.N.Y.).  Outside of the PSLRA context, BFA served as co-lead counsel while representing Detroit P&F and recently secured the largest shareholder derivative settlement in the history of the Delaware Court of Chancery in *The Police and Fire Retirement System of the City of Detroit v. Elon Musk, et al.*, No. 2020-0477 (Del. Ch. 2020) (resolution valued at $919 million).

Similarly, Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field.  *See* Bleichmar Decl., Ex. G (Firm Profile of Kessler Topaz).  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery); and *Luther v. Countrywide Fin. Corp.*, No. 12-cv-5125 (MRP) (MANx) (C.D. Cal.) ($500 million recovery).  Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several additional high-profile securities class actions, including: *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.) ($362.5 million settlement preliminarily approved); *Sjunde APFonden v. Goldman Sachs Group, Inc.*, No. 18-cv-12084 (VSB) (S.D.N.Y.); *In re SVB Financial Group Securities Litigation*, No. 23-cv-1097 (JD) (N.D. Cal.) (Silicon Valley Bank securities litigation); *Kusen v. Herbert*, No. 23-cv-2940 (AMO) (N.D. Cal.) (First Republic Bank securities litigation); and *In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-7669 (HSG) (N.D. Cal.).  Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

15

## C.    The Related Actions Should Be Consolidated

There are two Related Actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Shing v. ICON plc* | 2:25-cv-00763-JS-ARL | February 10, 2025 |
| *Police and Fire Retirement System of the City of Detroit v. ICON plc* | 2:25-cv-01807-HG | April 2, 2025 |

These actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against the same defendants, relating to similar periods of time, and are premised on similar types of misstatements.  Rule 42(a) grants broad discretion to courts to consolidate cases that involve common questions of law or fact, as here.  While the actions assert slightly different Class Periods, this minor difference does not render consolidation inappropriate because such minor differences in the pleadings do not outweigh the interests of judicial economy served by consolidation.  *See In re Bank of Am.*, 258 F.R.D. at 268 ("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation").  Accordingly, Detroit P&F and Local 464A respectfully request that the Related Actions be consolidated.

## CONCLUSION

For the reasons discussed above, Detroit P&F and Local 464A respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff; (2) approve their selection of BFA and Kessler Topaz to serve as Lead Counsel for the putative Class; (3) consolidate the Related Actions; and (4) grant any such further relief as the Court may deem just and proper.

16

Dated: April 11, 2025

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

 */s/ Javier Bleichmar*
Javier Bleichmar
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1341
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

Nancy A. Kulesa
Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
nkulesa@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff the Police & Fire Retirement System of the City of Detroit, and Proposed Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for the Trustees of the Local 464A United Food & Commercial Workers' Union Welfare Service Benefit Fund, and the Trustees of the Welfare and Pension Funds of Local 464A – Pension Fund, and Proposed Lead Counsel for the Class*

17

## CERTIFICATION OF WORD-COUNT COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 5,109 according to the word-processing system used to prepare the document.


Dated: April 11, 2025                          */s/ Javier Bleichmar*
                                                    Javier Bleichmar

18