**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAN KWOK SHING, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICON PLC, STEPHEN CUTLER, and BRENDAN BRENNAN,<br><br>Defendants. | Case No. 2:25-cv-00763-HG<br><br>CLASS ACTION |
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICON PLC, STEPHEN CUTLER, and BRENDAN BRENNAN,<br><br>Defendants. | Case No. 2:25-cv-01807-HG<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION**
**OF THE POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, THE**
**TRUSTEES OF THE LOCAL 464A UNITED FOOD & COMMERCIAL WORKERS'**
**UNION WELFARE SERVICE BENEFIT FUND, AND THE TRUSTEES OF THE**
**WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND FOR**
**APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF**
**LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS,**
**AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT........................................................................................................ 4

      A.     Detroit P&F and Local 464A Should Be Appointed Lead Plaintiff........................ 4

            1.     Detroit P&F and Local 464A Have the Largest Financial Interest..............5

            2.     Detroit P&F and Local 464A Satisfy the Relevant Requirements of Rule 23 .................................................................................................9

      B.     Detroit P&F and Local 464A's Selection of Counsel Should Be Approved........ 14

      C.     The Competing Motions Should Be Denied........................................................... 14

III.    CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atanasio v. Tenaris S.A.*,
  331 F.R.D. 21 (E.D.N.Y. 2019) ........................................................................5, 8, 9, 14

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) .......................................................................................12

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  17-CV-4846 (WFK) (PK),
  2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ...................................................................12

*Brady v. Top Ships Inc.*,
  324 F. Supp. 3d 335 (E.D.N.Y. 2018) .........................................................................3, 11

*Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................................15

*In re Cheetah Mobile, Inc. Sec. Litig.*,
  No. CV 20-5696-MWF,
  2021 WL 99635 (C.D. Cal. Jan. 12, 2021) .........................................................................8

*City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*,
  Nos. 24-cv-8664 (NRB), *et al.*,
  2025 WL 743986 (S.D.N.Y. Mar. 6, 2025) .................................................................13, 14

*City of Omaha Police & Fire Ret. Sys. v. Cognyte Software Ltd.*,
  No. 23 Civ. 1769 (LGS),
  2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023) ........................................................................9

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
  586 F.3d 703 (9th Cir. 2009) ..............................................................................................4

*Cullinan v. Cemtrex, Inc.*,
  287 F. Supp. 3d 277 (E.D.N.Y. 2018) ..........................................................................4, 11

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11 Civ. 3658(SAS),
  2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) .......................................................................15

*Hayes v. Enphase Energy, Inc.*,
  No. 24-cv-04249-JD,
  2025 WL 986469 (N.D. Cal. Mar. 31, 2025).......................................................................7

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018)...............................................................................7

ii

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 112 (S.D.N.Y. 2010) ................................................................................12

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................10

*Lee Goodman Tr. v. Wheels Up Experience Inc.*,
  No. 23 Civ. 2900 (OEM) (VMS),
  2023 WL 8631014 (E.D.N.Y. Dec. 12, 2023) ............................................................8

*Marquez v. Bright Health Grp., Inc.*,
  No. 22-CV-101 (AMD) (RLM),
  2022 WL 1314812 (E.D.N.Y. Apr. 26, 2022) .........................................................2, 5, 6, 15

*Mersho v. U.S. Dist. Ct. for D. of Ariz.*,
  6 F.4th 891 (9th Cir. 2021) ................................................................................. *passim*

*Owens v. FirstEnergy Corp.*,
  Nos. 2:20-cv-03785, *et al.*,
  2020 WL 6873421 (S.D. Ohio Nov. 23, 2020)........................................................8, 9

*In re Paysafe Ltd. f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*,
  No. 1:21-CV-10611-ER-KHP,
  2022 WL 1471122 (S.D.N.Y. May 10, 2022) ..........................................................14

*Peneycad v. RTX Corp.*,
  No. 3:23-cv-1035(JAM),
  2024 WL1932632 (D. Conn. May 2, 2024)........................................................10, 11

*Reinschmidt v. Zillow, Inc.*,
  No. C12-2084-RSM,
  2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) ......................................................8

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...............................................................................7

*Robison v. Digit. Turbine, Inc.*,
  Nos. 1:22-cv-00550-DAE, *et al.*,
  2022 WL 17881476 (W.D. Tex. Dec. 19, 2022) ........................................................7

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  Nos. 22 Civ. 6339 (JPC), *et al.*,
  2023 WL 3750115 (S.D.N.Y. June 1, 2023) ..............................................................6

*In re Spero Therapeutics, Inc. Sec. Litig.*,
  Nos. 22-CV-3125 (LDH) (RLM), *et al.*,
  2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) ...........................................................5

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
No. 3:18-cv-00988,
2019 WL 494129 (M.D. Tenn. Jan. 9, 2019)......................................................................6, 7, 8

*Targgart v. Next Bridge Hydrocarbons, Inc.*,
No. 24-CV-1927,
2024 WL 3640853 (E.D.N.Y. Aug. 3, 2024).............................................................................5

*Teamsters Loc. Union No. 727 Pension Fund v. Vanda Pharms. Inc.*,
No. 19 CV 1108 (FB)(LB),
2019 WL 7287202 (E.D.N.Y. May 24, 2019) ........................................................................11

*Vladimir v. Bioenvision, Inc.*,
No. 07 Civ. 6416(SHS)(AJP),
2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ......................................................................7, 9

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
Nos. 05-CV-04617 (RJH), *et al.*,
2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ...........................................................................8

**Statutes**

15 U.S.C. § 78u-4(a) ..................................................................................... *passim*

iv

Detroit P&F and Local 464A respectfully submit this Memorandum of Law in further support of their motion for appointment as Lead Plaintiff (ECF No. 27) and in opposition to the competing motions (ECF Nos. 19 & 23).[1]

## I.    INTRODUCTION

On April 11, 2025, Detroit P&F and Local 464A filed a timely motion under the PSLRA for an Order: (1) appointing Detroit P&F and Local 464A as Lead Plaintiff; (2) approving their selection of BFA and Kessler Topaz as Lead Counsel for the Class; (3) consolidating the Related Actions pursuant to Rule 42(a); and (4) granting any such further relief as the Court may deem just and proper.  In addition to Detroit P&F and Local 464A's motion, motions seeking appointment as Lead Plaintiff were also filed by the Public Employees' Retirement System of Mississippi ("MPERS") (ECF No. 19) and Roofers Local No. 149 Pension Fund ("Roofers") (ECF No. 23). Roofers subsequently withdrew its motion and does not challenge Detroit P&F and Local 464A's appointment as Lead Plaintiff (ECF No. 31).

A straightforward application of the PSLRA provides that the "most adequate plaintiff"— the movant entitled to appointment as Lead Plaintiff—is the "person or group of persons" asserting the largest financial interest that also makes a *prima facie* showing of typicality and adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, Detroit P&F and Local 464A are the presumptive Lead Plaintiff under the analysis required by the PSLRA.

***First***, with losses of nearly $2.3 million under the LIFO accounting methodology—the methodology overwhelmingly favored by courts in this District and across the country for analyzing financial interest—Detroit P&F and Local 464A unquestionably possess the largest

---

[1]    Unless otherwise noted, all capitalized terms are defined in Detroit P&F and Local 464A's opening brief, *see* ECF No. 28, all emphasis is added, and all internal citations and quotation marks are omitted.

1

financial interest in the litigation.  *See Marquez v. Bright Health Grp., Inc.*, No. 22-CV-101 (AMD) (RLM), 2022 WL 1314812, at *5 (E.D.N.Y. Apr. 26, 2022) (explaining that "[m]ost courts agree that the largest loss is the critical ingredient in determining the largest financial interest" and that "the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses") (alteration in original).  As set forth in the chart below, Detroit P&F and Local 464A have suffered larger losses than the losses claimed by MPERS and Roofers **combined**.  Accordingly, Detroit P&F and Local 464A possess the "largest financial interest" in this litigation.

| Movant | Claimed Losses[2] |
|---|---|
| **Detroit P&F and Local 464A** | **$2,287,220.13** |
| MPERS | $1,970,834.00 |
| ~~Roofers~~ <br> [ECF No. 31, Notice of Withdrawal] | ~~$179,155.74~~ |

Tellingly, like Detroit P&F and Local 464A, MPERS argued in its initial motion that it should be appointed Lead Plaintiff based on the "losses" it incurred.  ECF No. 20 at 9.  Any effort by MPERS to belatedly advocate for a different method of assessing financial interest—only **after** recognizing that it did not incur the largest losses—should be rejected as inconsistent with their prior arguments and against the overwhelming weight of the caselaw in this District and throughout the country.  Indeed, as the Honorable Roanne L. Mann explained, "[p]resenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline . . . has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs."  *Bright Health*, 2022 WL 1314812, at *6.

---

[2]    The movants' claimed losses are taken from their respective filings.  *See* ECF Nos. 29-2 (Detroit P&F and Local 464A), 21-2 (MPERS), & 25-3 (Roofers).

***Second***, in addition to asserting the dominant financial interest, Detroit P&F and Local 464A readily satisfy the typicality and adequacy requirements of Rule 23 and are perfectly situated to represent all Class members. As set forth in their Joint Declaration, Detroit P&F and Local 464A are a small cohesive group of sophisticated institutional investors that collectively manage more than $4.1 billion in assets on behalf of more than 31,000 participants and beneficiaries. *See* ECF No. 29-3, ¶¶ 2-5. They have experience overseeing securities class action and other shareholder litigation—including achieving the largest shareholder derivative settlement in Delaware Chancery Court history—and fully understand the Lead Plaintiff's responsibilities and obligations to the Class under the PSLRA. *See id.* ¶¶ 2-7. Detroit P&F and Local 464A have been fully engaged in this case, held a conference call to discuss their joint oversight over the action, and are clearly willing and able to undertake their fiduciary responsibilities to ensure the vigorous prosecution of this litigation, which is further evidenced by Detroit P&F's filing of the second-filed action expanding the Class's claims. *See id.*; *see also Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 347 (E.D.N.Y. 2018) (appointing group of investors that submitted a "declaration [that] demonstrates its members' commitment to overseeing the work of their selected counsel" and "explain[ing] why they chose to work together—they are like-minded investors who suffered substantial losses").

Any contention that Detroit P&F and Local 464A's partnership would not deliver significant benefits to the Class would be disingenuous and wrong. MPERS has successfully served as part of similar lead plaintiff groups in prior securities class actions and specifically touted the benefits that groups of investors provide to absent class members. In fact, MPERS has strongly advocated for investors as a member of a group seeking appointment as lead plaintiff under the PSLRA in roughly ***two dozen cases—including two cases after it moved for Lead Plaintiff here—***

3

and has been appointed as lead plaintiff as a group member *at least thirteen times.* *See* Exhibit A to the Supplemental Declaration of Javier Bleichmar (the "Bleichmar Suppl. Decl.") submitted herewith. In sum, Detroit P&F and Local 464A are the prototypical investors Congress sought to encourage to lead securities class actions and there can be no doubt that Detroit P&F and Local 464A will zealously represent the interests of the Class.

*Third*, Detroit P&F and Local 464A have selected BFA and Kessler Topaz as Lead Counsel. BFA and Kessler Topaz are nationally recognized securities class action litigation firms that have recovered billions of dollars in damages for injured shareholders. Thus, BFA and Kessler Topaz are highly qualified to prosecute this case and should be appointed Lead Counsel for the Class. *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009) ("It would be difficult for the statute to be more clear that it is the lead plaintiff who selects lead counsel, not the district court."); *Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277, 289 (E.D.N.Y. 2018) ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection . . . .").

*Fourth*, because there is no "proof" to rebut Detroit P&F and Local 464A's presumptive status as the most adequate plaintiff under the PSLRA, Detroit P&F and Local 464A are entitled to appointment and the competing motions must be denied. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption). Accordingly, Detroit P&F and Local 464A respectfully request that the Court grant their motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    Detroit P&F and Local 464A Should Be Appointed Lead Plaintiff

Under the PSLRA, "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23" is the presumptively most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

4

The process is sequential, and the Court must appoint the presumptively "most adequate plaintiff" unless a competing movant can provide "***proof***" that the movant or movant group will not fairly and adequately represent the Class or is subject to unique defenses. *Id.* § 78u-4(a)(3)(B)(iii)(II). Because Detroit P&F and Local 464A are the presumptively most adequate plaintiff to represent the Class and no "proof" exists that could rebut that presumption, Detroit P&F and Local 464A are entitled to appointment as Lead Plaintiff. *See, e.g.*, *Mersho v. U.S. Dist. Ct. for D. of Ariz.*, 6 F.4th 891, 902 (9th Cir. 2021) (explaining that the PSLRA requires courts to "articulate how the ***evidence***" presented by competing movants "***proves***" the presumptive lead plaintiff's inadequacy); *In re Spero Therapeutics, Inc. Sec. Litig.*, Nos. 22-CV-3125 (LDH) (RLM), *et al.*, 2022 WL 4329471, at *9 (E.D.N.Y. Sept. 19, 2022) ("exacting proof [is] needed to rebut the PSLRA's presumption").

### 1.    Detroit P&F and Local 464A Have the Largest Financial Interest

In determining which movant has the largest financial interest, "[m]ost courts agree that the largest loss is the critical ingredient" and "the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses." *Bright Health*, 2022 WL 1314812, at *5 (alteration in original); *see also Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 27 (E.D.N.Y. 2019) ("approximate loss is the most important factor"); *Targgart v. Next Bridge Hydrocarbons, Inc.*, No. 24-CV-1927, 2024 WL 3640853, at *4-5 (E.D.N.Y. Aug. 3, 2024) (same).

Further demonstrating that loss is the determinative factor courts consider when assessing financial interest, all movants reported their respective financial interests to the Court in terms of the losses they incurred. *See* ECF Nos. 20 at 9, 24 at 6, & 28 at 8. MPERS—the only remaining competing movant—specifically recognized that "***[t]he most important factor is financial loss***" and argued that it "should be appointed lead plaintiff because . . . it believes that it has the largest

5

financial interest in the relief sought by the class" given that it "sustained losses of over $1.97 million from Class Period transactions in ICON stock." ECF No. 20 at 9.

Based on the movants' respective submissions to the Court, there is no question that Detroit P&F and Local 464A suffered the largest losses in connection with their Class Period transactions in ICON ordinary shares, and thus possess the largest financial interest of any movant before the Court. Indeed, Detroit P&F and Local 464A incurred a loss ***16% larger than MPERS***, as set forth in the table above. *See supra* at 2.

Any belated effort by MPERS to pivot from losses to an alternative method of calculating financial interest would be inconsistent with caselaw rejecting post-motion attempts to change how financial interest is assessed, particularly given that MPERS told the Court in its initial motion papers that it should be appointed by virtue of its respective losses. *See* ECF Nos. 20 at 9. Indeed, "courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss." *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.,* Nos. 22 Civ. 6339 (JPC), *et al.*, 2023 WL 3750115, at *5 (S.D.N.Y. June 1, 2023) (alteration in original); *see also Bright Health,* 2022 WL 1314812, at *6 ("Presenting new methodologies [or] loss calculations . . . only in opposition, after the PSLRA deadline . . . has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs.").

As a result, courts routinely reject after-the-fact arguments promoting non-loss factors by movants unable to claim the largest loss.[3] When a movant "did not make their argument that [non-loss] factors are the most important in their original motion and, instead, framed their financial

---

[3]    Non-loss factors typically include: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; [and] (3) the total net funds expended during the class period." *Bright Health*, 2022 WL 1314812, at *5.

interest in terms of alleged loss alone. . . . [it] undermines [the movant's] later argument that [other] factors must control the Court's analysis." *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-cv-00988, 2019 WL 494129, at *3 n.9 (M.D. Tenn. Jan. 9, 2019); *see also Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477-78 (S.D.N.Y. 2011) (rejecting movant's "revised argument" that "the loss factor can be ignored and that it should be selected based on [its] larger net shares purchased and net expenditures"); *Hayes v. Enphase Energy, Inc.*, No. 24-cv-04249-JD, 2025 WL 986469, at *2 (N.D. Cal. Mar. 31, 2025) (rejecting movants' "belated attempts" to advance financial interest methodologies based on net shares and *Dura*-adjusted losses, where the movants failed to raise these arguments in their opening motions).

Even if the Court is inclined to consider conflicting arguments raised for the first time in an opposition brief, appointing a movant based on factors other than loss in this instance would be inconsistent with the overwhelming weight of the caselaw. Courts routinely find that ***any*** difference in loss is determinative of financial interest. *See, e.g., Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416(SHS)(AJP), 2007 WL 4526532, at *5 n.10 (S.D.N.Y. Dec. 21, 2007) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball." (quoting *In re Bally Total Fitness Sec. Litig.*, Nos. 04C3530, *et al.*, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005))); *see also Robison v. Digit. Turbine, Inc.*, Nos. 1:22-cv-00550-DAE, *et al.*, 2022 WL 17881476, at *7 (W.D. Tex. Dec. 19, 2022) (appointing movant with a 0.87% larger loss over a movant that prevailed on non-loss factors); *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) ("[A]ny financial difference [in loss] is meaningful in determining a lead plaintiff" even if "the difference in losses is *de minimis*.").

7

Other courts place meaningful weight on non-loss factors only when "the difference in losses is so small that they should be treated as equal." *Tenaris*, 331 F.R.D. at 28; *see also Lee Goodman Tr. v. Wheels Up Experience Inc.*, No. 23 Civ. 2900 (OEM) (VMS), 2023 WL 8631014, at *2 (E.D.N.Y. Dec. 12, 2023) ("a movant who suffered the greatest loss by a substantial percentage is likely to have the largest financial interest, even if . . . other . . . factors favor another movant").

Here, Detroit P&F and Local 464A incurred a loss roughly ***$320,000 greater than MPERS*** (a 16% difference), which is highly significant, not "equal." *Tenaris*, 331 F.R.D. at 28. Courts have repeatedly appointed movants with similar and lesser loss advantages over movants that purchased more total shares and net shares and expended more net funds. *See, e.g.*, *id.* (appointing movant with a roughly $27,000 greater loss over movant with more total shares, net shares, and funds expended); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, Nos. 05-CV-04617 (RJH), *et al.*, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) (rejecting MPERS's argument that a 15% loss differential was negligible and the court should consider non-loss factors); *In re Cheetah Mobile, Inc. Sec. Litig.*, No. CV 20-5696-MWF (AFMx), 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (appointing movant with 7% greater loss over opposing movant that purchased more shares and net shares and expended more net funds); *Owens v. FirstEnergy Corp.*, Nos. 2:20-cv-03785, *et al.*, 2020 WL 6873421, at *9 (S.D. Ohio Nov. 23, 2020) (treating "the loss factor as determinative" and appointing a movant with a 10% larger loss over a movant with more total and net shares purchased, and more net funds expended); *Acadia*, 2019 WL 494129, at *4-5 (same); *Reinschmidt v. Zillow, Inc.*, No. C12-2084-RSM, 2013 WL 1092129, at *2 (W.D. Wash. Mar. 14, 2013) (14% loss differential "determinative" and not "*de minimis*" despite opposing movant claiming "higher values for net shares purchased and net funds expended").

8

Treating loss as the determinative financial interest factor in this case makes good and practical sense.  Every movant presented their respective financial interests in terms of loss under traditional inventory accounting methodologies—so it allows for ease of comparison between the movants.  *See FirstEnergy*, 2020 WL 6873421, at *9 (declining to rely on non-loss factors "when the parties present [] straightforward loss calculations").  More broadly, factors other than loss "have almost no independent significance since, for example, the number of shares purchased alone gives no sense of financial impact without knowing the share price, the time of the purchase, or the net expenditures of the party on those shares."  *Tenaris*, 331 F.R.D. at 27.  Factors other than loss simply "help determine the financial loss each movant experienced, which is the benchmark for determining, as the PSLRA demands, the largest financial interest."  *Id.*[4]  At bottom, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period," and other non-loss metrics simply "do not advance the ball" in this instance.  *Bioenvision*, 2007 WL 4526532, at *5 n.10.

### 2. Detroit P&F and Local 464A Satisfy the Relevant Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Detroit P&F and Local 464A satisfy the applicable requirements of Rule 23—adequacy and

---

[4]     The main purpose of the non-loss factors is to root out adequacy and typicality infirmities that impact movants, none of which are present here.  *See FirstEnergy*, 2020 WL 6873421, at *10 (non-loss "factors provide 'additional information' that can reveal whether lead plaintiff candidates 'actually profited during the Class Period from the inflated stock prices'").  Specifically, movants that sell more shares of stock than they purchase during the class period are known as "net sellers" of stock.  Movants that receive more in proceeds from selling stock than they spent to purchase those shares are known as "net gainers."  Courts have held that net sellers and net gainers are subject to unique defenses because they benefited from the alleged fraud and their appointment would place the putative class at risk.  *See, e.g., City of Omaha Police & Fire Ret. Sys. v. Cognyte Software Ltd.*, No. 23 Civ. 1769 (LGS), 2023 WL 6458930, at *4-6 (S.D.N.Y. Oct. 4, 2023) (refusing to appoint movant with "the largest financial loss" because its "status as a 'net seller' and 'net gainer' . . . subjects it to unique defenses that prevent [it] from adequately representing the class).  No such concerns are present here.

typicality.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).

As demonstrated in their opening brief, Detroit P&F and Local 464A's claims are typical of the Class's claims.  *See generally* ECF No. 28.  Like all other Class members, Detroit P&F and Local 464A: (1) purchased ICON ordinary shares during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby.  *See, e.g.*, *Kaplan*, 240 F.R.D. at 94 (stating that the typicality requirement is satisfied when the presumptive lead plaintiff's "claims arise from the same conduct from which the other class members' claims and injuries arise").  Detroit P&F and Local 464A also satisfy Rule 23's adequacy requirement because they are capable of "fairly and adequately protect[ing] the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Detroit P&F and Local 464A, by asserting the largest losses of any movant before the Court, have more than a sufficient interest in this case to ensure the vigorous prosecution of this litigation.

Moreover, as demonstrated in their Joint Declaration, Detroit P&F and Local 464A are fully committed to prosecuting this action efficiently and in the best interests of the Class.  *See* ECF No. 29-3, ¶¶ 7-15.  They each have experience prosecuting securities and shareholder litigation—with Detroit P&F recently achieving a record resolution valued at $919 million in *The Police and Fire Retirement System of the City of Detroit v. Elon Musk, et al.*, No. 2020-0477 (Del. Ch. 2020)—and have already taken active steps to protect the interests of the Class in this case and oversee counsel.  *See* ECF No. 29-3, ¶¶ 1-15.  This includes Detroit P&F's filing of an additional complaint asserting an expanded class period to better protect the claims of injured investors, which ultimately led to Detroit P&F's and Local 464A's partnership in this case.  *See id*. ¶ 8; *see also Peneycad v. RTX Corp.*, No. 3:23-cv-1035(JAM), 2024 WL1932632, at *8 (D. Conn. May 2,

10

2024) (group member's "investigation and filing of the second complaint constitutes sufficient involvement in the litigation . . . that . . . weighs in favor of the grouping"). And, as sophisticated institutional investors with billions of dollars in assets under management, Detroit P&F and Local 464A are the prototypical investor Congress sought to encourage to lead securities class actions. *See Teamsters Loc. Union No. 727 Pension Fund v. Vanda Pharms. Inc.*, No. 19 CV 1108 (FB)(LB), 2019 WL 7287202, at *4 n.3 (E.D.N.Y. May 24, 2019) ("Congress prefers institutional investors . . . to serve as lead plaintiff in PSLRA cases.").

Following their respective deliberative processes, Detroit P&F and Local 464A each independently determined that working together would allow them to maximize the recovery for the Class through the sharing of their experiences, perspectives, and resources. *See* ECF No. 29-3, ¶¶ 8-10. Then, prior to filing their motion, representatives of Detroit P&F and Local 464A participated in a conference call to discuss their leadership of this case to ensure that it will be litigated in the best interests of all Class members. *See id.* ¶¶ 11-12.

Such cooperation between institutional investors like Detroit P&F and Local 464A is expressly permitted by the PSLRA and courts routinely appoint cohesive groups of investors as lead plaintiff in securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also, e.g.*, *Mersho*, 6 F.4th at 903 n.4 ("[It] is clear from the statutory language" that "group[s] can serve as a lead plaintiff."); *Top Ships Inc.*, 324 F. Supp. 3d at 347 (appointing a lead plaintiff group where the group submitted a "declaration [that] demonstrates its members' commitment to overseeing the work of their selected counsel" and "explain[ing] why they chose to work together—they are like-minded investors who suffered substantial losses"); *Cemtrex*, 287 F. Supp. 3d at 287 (appointing group of investors that "submitted sufficient evidence of their involvement in the formation of the group: '[i]n order to formalize our joint leadership of the Actions, the members

11

of the . . . Group communicated, with counsel, about the benefits of working together jointly to prosecute the litigation") (first alteration in original); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing a group that submitted a joint declaration which "explained its members' interests in the current litigation, made clear it would be available to actively participate in this litigation," and "previously held a conference regarding its members' and the class claims").[5]

Further demonstrating the propriety of groups of institutional investors serving as lead plaintiff, both MPERS and Roofers have previously moved for lead plaintiff appointment (and been appointed) as part of groups of investors. *See* Bleichmar Suppl. Decl., Exs. A & B. MPERS has moved for lead plaintiff as part of a group in at least ***twenty-three cases (including two after it moved for Lead Plaintiff here)*** and has been appointed a member of a lead plaintiff group ***at least thirteen times***. *See* Bleichmar Suppl. Decl., Ex. A. Significantly, MPERS has also repeatedly recognized and argued that groups can benefit absent class members given "the ability to share and combine resources" and has submitted joint declarations in support of its motions just like the one Detroit P&F and Local 464A submitted in this case. *See, e.g.*, *Westchester Putnam Counties Heavy & Highway Laborers Loc. 60 Benefits Fund v. Atkore Inc.*, No. 1:25-cv-01851 (N.D. Ill.) ECF No. 24-3, ¶ 7, attached as Exhibit C to the Bleichmar Suppl. Decl. Indeed, after MPERS moved for appointment as Lead Plaintiff in this case, it sought appointment as lead plaintiff in *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund v.*

---

[5]      *See also Janbay v. Canadian Solar, Inc.,* 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (appointing group of investors that submitted declaration "demonstrat[ing] their intent to participate directly in this litigation and their willingness and ability to serve as class representatives"); *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.,* 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Groups of plaintiffs are specifically permitted by the PSLRA to be appointed lead plaintiff. . . . Because they have established their ability to act independent of counsel, the [institutional investors] are a proper group and are presumptive lead plaintiffs.").

*Atkore Inc.*, No. 1:25-cv-01851 (N.D. Ill.), along with another, unrelated institutional investor. There, the MPERS group, which is virtually indistinguishable from Detroit P&F and Local 464A, represented that it was "**Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**" based on representations in a joint declaration that closely mirrors Detroit P&F and Local 464A's Joint Declaration in this action. *Compare Westchester Putnam Counties Heavy & Highway Laborers Loc. 60 Benefits Fund v. Atkore Inc.*, No. 1:25-cv-01851 (N.D. Ill.) ECF No. 23 at 10 (emphasis in original), attached as Exhibit D to the Bleichmar Suppl. Decl., and Bleichmar Suppl. Decl., Ex. C *with* ECF No. 29-3. For example, MPERS and its co-movant argued that they had "demonstrated their commitment to working cohesively in the prosecution of this litigation," as evidenced by the group members' mutual decision to collaborate, their pre-motion conference call, ability to share resources, and other collaborative efforts described in their joint declaration. Bleichmar Suppl. Decl. Exs. C ¶¶ 7-9 & D at 10-11.

The same is true for Detroit P&F and Local 464A. *See* ECF No. 29-3. Any attempt to contend that Detroit P&F and Local 464A are an insufficiently cohesive group would require actual evidence of inadequacy—which the competing movants cannot offer—rather than mere speculation. *See Mersho*, 6 F. 4th at 899 ("The [PSLRA] requires proof that the presumptive lead plaintiff is not adequate."); *id.* at 901 ("Misgivings are not evidence that cast 'genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff.'") (alteration in original). To the contrary, the only evidence before the Court, which includes Detroit P&F and Local 464A's Joint Declaration, demonstrates that Detroit P&F and Local 464A are a proper group and well-equipped to lead this litigation together. *See, e.g., City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, Nos. 24-cv-8664 (NRB), *et al.*, 2025 WL 743986, at *4 (S.D.N.Y. Mar. 6, 2025) (rejecting argument that a movant group of institutions was

13

an "artificial group" because their joint declaration established their cohesiveness); *In re Paysafe Ltd. f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*, No. 1:21-CV-10611-ER-KHP, 2022 WL 1471122, at *5-6 (S.D.N.Y. May 10, 2022) (explaining that movant groups can make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers," and appointing a group that "submitted an affidavit describing their decision to participate in this case and how they will cooperate on decisions").

Accordingly, Detroit P&F and Local 464A, as the movant with the largest financial interest that also satisfies the typicality and adequacy requirements of Rule 23, are entitled to appointment as Lead Plaintiff.

### B.    Detroit P&F and Local 464A's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the Court's approval. *See id*. § 78u-4(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Tenaris*, 331 F.R.D. at 31 ("The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class."). Accordingly, Detroit P&F and Local 464A's selection of BFA and Kessler Topaz—firms with significant experience prosecuting complex securities class actions— as Lead Counsel should be approved.

### C.    The Competing Motions Should Be Denied

As demonstrated above, each competing movant's claimed losses are less than Detroit P&F and Local 464A's losses, and there is no "proof" to rebut Detroit P&F and Local 464A's presumptive status. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Mersho*, 6 F.4th at 902 (explaining that the PSLRA requires courts to "articulate how the *evidence*" presented by competing movants

14

"***proves***" the presumptive lead plaintiff's inadequacy); *Bright Health*, 2022 WL 1314812, at *9 (rejecting challenges to presumptive lead plaintiff because, "[a]part from speculation, [the competing movant] has put forth no evidence demonstrating" that the presumptive lead plaintiff was inadequate). This, without more, is sufficient to deny the competing motions under the PSLRA's "straightforward" lead plaintiff selection process. *Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status[.]"); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) ("[T]he inquiry can stop here, now that the Court has determined [which movant] has the largest financial interest and is otherwise typical and adequate.").

## III.    CONCLUSION

For the reasons discussed above, Detroit P&F and Local 464A respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff; (2) approve their selection of BFA and Kessler Topaz to serve as Lead Counsel for the Class; (3) consolidate the Related Actions; and (4) grant any such further relief as the Court may deem just and proper.

Dated: May 12, 2025                                    Respectfully submitted,

                                                       **BLEICHMAR FONTI & AULD LLP**

                                                        */s/ Javier Bleichmar*
                                                       Javier Bleichmar
                                                       300 Park Avenue, Suite 1301
                                                       New York, New York 10022
                                                       Telephone: (212) 789-1341
                                                       Facsimile: (212) 205-3960
                                                       jbleichmar@bfalaw.com

                                                       Nancy A. Kulesa
                                                       Ross Shikowitz
                                                       75 Virginia Road
                                                       White Plains, New York 10603
                                                       Telephone: (914) 265-2991

15

Facsimile: (212) 205-3960
nkulesa@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff the Police & Fire Retirement System of the City of Detroit, and Proposed Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for the Trustees of the Local 464A United Food & Commercial Workers' Union Welfare Service Benefit Fund and the Trustees of the Welfare and Pension Funds of Local 464A – Pension Fund, and Proposed Lead Counsel for the Class*

16

**CERTIFICATION OF WORD-COUNT COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 4,915 according to the word-processing system used to prepare the document.


Dated: May 12, 2025                                      */s/ Javier Bleichmar*
                                                                        Javier Bleichmar